**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | **Criminal Action No. 25-158 (SRC)** |
| | : | |
| v. | : | |
| | : | |
| DAVID REAMS. | : | **OPINION & ORDER** |
| | : | |
| | : | |

**CHESLER**, District Judge

      This matter comes before the Court on Defendant David Reams' ("Defendant" or "Reams") motion to suppress, (Dkt. No. 19 (the "Motion")). In the Motion, Defendant moves to suppress evidence of the firearm, ammunition, and narcotics obtained from Defendant's person on May 6, 2024. The United States of America (the "Government") opposes the Motion. (Dkt. No. 20.)

      On May 29, 2025, the Court entered an opinion and ordered that an evidentiary hearing on the Motion be scheduled. (Dkt. No. 21.) On August 20, 2025, the Court held an evidentiary hearing on the Motion in accordance with its May 29, 2025 order, during which it heard testimony from two Government witnesses, Detective Sergeant Mustafa Dombayci of the Paterson Police Department ("Detective Dombayci") and Detective Kenneth Kerwin of the Paterson Police Department ("Detective Kerwin"), received CCTV footage, body-worn camera ("BWC") footage, and three photographs into evidence, and heard arguments from the parties on the Motion. The Court has considered all papers filed in connection with the Motion, as well as the evidence presented at the Hearing. For the reasons set forth below, the Court will **DENY** Defendant's Motion.

## I.     FACTUAL BACKGROUND

Defendant Reams is charged in a three-count Indictment with Possession of a Firearm and Ammunition by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1), Possession with Intent to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Dkt. No. 15.) The facts pertinent to the Motion are as follows:

On or around May 6, 2024, at approximately 9:30 P.M., Detective Dombayci was conducting CCTV surveillance via Paterson city cameras in the area of 10th Avenue and East 26th Street. This area is a known "hot spot" or designated high crime area. While watching the CCTV, Detective Dombayci observed a man, later identified as Reams, lift his sweatshirt and move or adjust an object in his waistband while he held a cell phone in his right hand. Detective Dombayci believed this object to be a white and gray firearm magazine. A few seconds later, Detective Dombayci observed Reams conduct a "security check" of his waistband with one hand while holding a bottle of tequila in his other hand. Detective Dombayci observed Reams conduct several additional "security checks" of his waistband area over the next few minutes. Detective Dombayci then contacted a group of Paterson Police Department ("PPD") detectives (the "PPD Detectives") in PPD's Street Crime Unit who were on patrol at the time to inform them of what he observed on the CCTV footage. The other PPD Detectives planned to head towards the area to conduct a Terry stop and frisk while Detective Dombayci maintained surveillance on Reams. At around 9:55 P.M., Detective Dombayci observed Reams conduct another "security check" of his waistband region, which furthered his belief that Reams possessed a firearm and proceeded to contact the PPD Detectives again to relay his continued observations of Reams and belief that Reams was "armed and dangerous."

At approximately 10:14 P.M., the PPD Detectives arrived at 10th Avenue and East 26th Street and approached Reams, who, at this point, was standing near a dirt bike.  The PPD Detectives approached Reams and directed him to not move and put his hands up.  The PPD Detectives believed Reams was trying to flee on the dirt bike and one detective yelled, "stop," and wrapped his arms around Reams' torso while another detective, Detective Kerwin, patted Reams' waistband area based on Detective Dombayci's belief that Reams was carrying a firearm in that area.  Detective Kerwin patted Reams' front waistband area and felt what he believed to be a firearm and yelled, "gun, gun, gun."  A brief struggle occurred, and a firearm fell onto the sidewalk from Reams' waistband, causing the extended magazine to break and eject rounds of ammunition onto the sidewalk.  The Detectives then placed Reams in handcuffs and walked him towards an unmarked patrol car where the Detectives conducted a search of his person prior to placing him in the patrol car.  During the search, the Detectives found a bag of drugs in Reams' pocket, which fell to the ground.  Reams tried to flee, but the Detectives caught him after a brief foot pursuit and placed Reams into the patrol car.

## II.    MOTION TO SUPPRESS

Defendant's Motion to Suppress asks the Court to determine whether the actions of the PPD Detectives on May 6, 2024 constituted an arrest or a <u>Terry</u> stop and frisk.  (Mot. at 3.)  The Court finds that, based on the submissions of the parties and the evidence presented at the Hearing, the PPD Detectives had sufficient reasonable suspicion to lawfully conduct an investigatory stop of Reams, pursuant to the Fourth Amendment and the Supreme Court decision in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968) and its progeny, and thereafter had probable cause to arrest Reams after the initial stop.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV. The Supreme Court has held "that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."  Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (discussing its prior holding in Terry).  The Supreme Court has further held that reasonable suspicion depends on whether an officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity."  United States v. Cortez, 449 U.S. 411, 417–18 (1981).  Courts must determine whether reasonable suspicion exists based on the "totality of the circumstances."  United States v. Arvizu, 534 U.S. 266, 273 (2002).  This approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'"  Id.  (quoting Cortez, 449 U.S. at 418).

The Court has carefully considered the evidence presented in connection with the Motion and during the Hearing and concludes that the PPD Detectives had reasonable suspicion to conduct a stop and frisk of Reams.  The Court does not take the events of May 6, 2024 in isolation but considers them together in arriving at this conclusion.  Detective Dombayci testified that around 9:30 P.M., he observed on CCTV what he believed to be a firearm magazine in Reams' front waistband.  He testified that he formed this belief based upon his prior training and experience as a member of the PPD and also as an owner of a firearm.  While Defendant argues that Detective Dombayci did not contact the PPD Detectives on patrol immediately after that observation, it is clear to the Court that Detective Dombayci continued his surveillance of Reams to see if there were subsequent actions that would confirm his belief that Reams possessed a firearm magazine

in his waistband.  Indeed, Detective Dombayci testified that he observed Reams conduct several subsequent "security checks" of his waistband area after first observing what he believed to be a firearm magazine.  Detective Dombayci testified about his training on "security checks" and knowledge that a "security check" is a subconscious movement individuals perform to check if an item remains where the individual believes it to be.  Upon his continued surveillance and observation of subsequent "security checks," Detective Dombayci concluded that his original belief was correct that Reams possessed a firearm magazine.

And while the Court notes that a "security check" could be an innocent check for a phone, for example, the problem for Reams here is that the "security checks" were conducted while Reams was visibly holding a cell phone in his hand.  In looking at the totality of the evidence, the fact that the incident occurred at night in a "hot spot" known for its "open-air drug market" and shootings, Detective Dombayci's testimony about his training and experience in identifying "security checks" and firearm magazines, along with the combination of Detective Dombayci's observation of a firearm magazine in Reams' front waistband area and his observation of subsequent "security checks" of that same area, sufficiently demonstrates reasonable suspicion here.  See Terry, 392 U.S. at 27 ("And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience."); see, e.g., United States v. Terry, 518 F. App'x 128–29 (3d Cir. 2013) (finding a detective had reasonable suspicion to believe a defendant was armed and dangerous where, "[g]iven the late hour and the high-crime neighborhood," based on the detective's experience and training, he construed defendant's "shoving motion" toward his waistband as an attempt "to

conceal a weapon in his waistband"). The totality of the circumstances in this case sufficiently give rise to reasonable suspicion.

As the Court has found that the PPD Detectives had reasonable suspicion to lawfully stop and frisk Reams, the Court must determine whether the PPD Detectives had probable cause to arrest Reams. Broadly speaking, "the Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause." Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Id. at 483.

Here, Detective Kerwin testified that when he and the other PPD Detectives conducted their Terry stop of Reams, he almost immediately felt a firearm when patting down Reams at the front of his waistband—the area in which the PPD Detectives believed Reams was carrying a firearm. This testimony, by itself, is more than enough to create probable cause for an arrest. See United States v. Valentine, 232 F.3d 350, 357 (3d Cir. 2000) ("New Jersey presumes that someone carrying a handgun does not have a permit to possess it until the person establishes otherwise." (citing N.J.S.A. 2C:39-2(b))). Detective Kerwin's testimony on this point was not impeached. And the evidence also shows that a few moments after Detective Kerwin's pat down of Reams' person, a firearm fell to the ground, causing the magazine to break and eject ammunition onto the sidewalk. The Court therefore finds that probable cause existed to place Reams under arrest.

The search of Reams' person that occurred shortly thereafter next to the PPD's unmarked patrol car while Reams was handcuffed was also lawful and led to the discovery of a bag of heroin in Reams' pocket. See Maryland v. King, 569 U.S. 435, 449 (2013) ("The validity of the search

of a person incident to a lawful arrest has been regarded as settled from its first enunciation, and has remained virtually unchallenged.").

Given the existence of reasonable suspicion to stop and frisk the Defendant and probable cause to arrest the Defendant, the Defendant's Motion to Suppress the evidence of the gun, ammunition, and drugs in this case is denied.

*     *     *

For these reasons,

**IT IS** on this 22nd day of August, 2025

**ORDERED** that Defendant's Motion to Suppress, (Dkt. No. 19), is **DENIED** in its entirety.


_s/ Stanley R. Chesler_
STANLEY R. CHESLER, U.S.D.J.